UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| GULF COAST MARKETING GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JTH TAX, LLC, d/b/a Liberty ) <br> Tax Service, ) <br> ) <br> Defendant. ) <br> _____) | Case No.: **2:21-cv-78** |

**Serve:**
  JTH Tax, LLC d/b/a Liberty Tax Service
  Attn: C T Corporation System, Registered Agent
  4701 Cox Road, Ste. 285
  Glen Allen, Virginia 23060

## COMPLAINT

COMES NOW the Plaintiff, Gulf Coast Marketing Group, Inc. ("Gulf Coast"), by counsel, for its Complaint against Defendant, JTH Tax, LLC d/b/a Liberty Tax Service ("Liberty Tax"), and hereby state as follows:

### The Parties

1. Gulf Coast is an Illinois Corporation with its principal place of business located at PO Box 3166, Springfield, Illinois 62708. Gulf Coast is a member of the Liberty Tax Area Developer Association.

2. Liberty Tax is a Delaware limited liability company with its headquarters and principal place of business located at 2387 Liberty Way, Virginia Beach, VA 23456. Liberty Tax is a successor in interest to JTH Tax, Inc. d/b/a Liberty Tax Service.

## Subject Matter Jurisdiction

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity between the parties and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Personal Jurisdiction

4. Personal jurisdiction over Liberty Tax exists in Virginia because, among other reasons, Liberty Tax is incorporated in Virginia.

## Venue

1. Venue is proper in this Court because, among other reasons, it is a permissible venue under 28 U.S.C. § 1391 as a district in which Liberty Tax is subject to personal jurisdiction.

## Statement of Facts

2. Liberty Tax is in the business of selling franchises engaged in the preparation of tax returns as well as area development territories that support the franchisees within their prescribed geographic boundaries.

3. In 2008, Justin Williams ("Williams") and his wife were approached by representatives of Liberty Tax and offered an opportunity to move to a remote area in Texas and operate an area development territory near that area as well as a couple of franchises.

4. Williams decided to risk everything, including his family's future and life savings, based on the opportunity as described to him by Liberty Tax, and packed all of his family's belongings into a U-Haul and uprooted his family from Indiana to Texas.

5. On or about February 26, 2009, Williams, as a tenant in common with two others, signed an Assignment and Amendment to an Area Developer Agreement that was created on or about April 15, 2008 (the "Agreement"). Through this Agreement, Williams and his co-tenants

obtained the exclusive right to sell and support tax preparation franchises for Liberty Tax within certain areas in Mississippi and Texas (the "Territory"), for a ten-year period. The Agreement was set to expire April 15, 2018. *See* attached **Exhibit A.**

6. On or about October 20, 2011, the Area Developer on the Agreement was changed again from Williams and his co-tenants to Gulf Coast, an entity Williams and his co-tenants created. *See id.*

7. The Agreement provided that area developers, like Gulf Coast, were entitled to "an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term" of the Agreement. Agreement, ¶ 3.3.

8. The payment to Gulf Coast of any royalties, franchise fees, and/or interest collected by Liberty Tax from a franchisee was to be paid to Gulf Coast "not later than the last day of the next calendar month." *Id.* at ¶ 3.10.

9. E-filing fees are considered a tax preparation fee and must be included in the calculations when determining royalty payments to the area developers.

10. However, Liberty Tax did not always include the e-filing fees in its calculation of royalty payments to Gulf Coast, and, consequently, Gulf Coast did not receive the proper amount due to it from Liberty Tax.

**Liberty Tax Wrongfully Terminates the Agreement**

11. The following were well-known, general corporate policy and practice at Liberty Tax, as set forth by former Liberty Tax leadership: 1.) strict 180-day renewal notices for area development territories were not generally enforced when entities and agreements were in good standing, and 2.) though written notice to renew was required by Liberty Tax's agreements, oral notice of territory renewals were generally accepted by Liberty Tax.

12. For this reason, when the end of the ten-year term for the Agreement, April 15, 2018, came and went, Gulf Coast did not believe there was any cause for concern.

13. Additionally, Gulf Coast never received any notice or letter from Liberty Tax regarding renewal or any allegation of a breach by Gulf Coast of its obligations.

14. Thus, Gulf Coast continued to operate its Territory as usual, in accordance with the Agreement.

15. On August 13, 2019, Williams, on behalf of Gulf Coast, had a call with a representative of Liberty Tax, Cory Hughes ("Hughes"), to discuss renewing the Territory.

16. Hughes directed Williams to reach out to another representative of Liberty Tax, Renee Harvey ("Harvey").

17. Harvey indicated that, in order to renew the Agreement, she would need to send him an "Exhibit M" to fill out. *See* attached **Exhibit B**.

18. Harvey sent the requested "Exhibit M" out to Williams on that same day, August 13, 2019.

19. However, on August 14, 2019, before Williams could respond and fill out the "Exhibit M" document, Gulf Coast received a termination notice from Liberty Tax for the Territory. *See* attached **Exhibit C**.

20. Liberty Tax stated, as its basis for termination, that Gulf Coast "chose not to enter into a new area developer agreement, and [it] failed to notify Liberty in writing at least 180 days prior to the expiration of the [Agreement]." *Id.*

21. Surprised and concerned, Williams promptly followed up with Hughes via phone call as well as Harvey through multiple email communications on August 15, 2019. *See* attached **Exhibit D**.

22. Harvey responded and stated, "I can confirm that upon execution of the Exhibit M, you can then disregard the [termination notice] . . . ." This email was immediately followed up by another email from Harvey stating, "that came from . . . Will Harvey Senior Corporate Counsel." *Id.*

23. On August 16, 2019, Williams, on behalf of Gulf Coast, completed and delivered to Liberty Tax the requisite "Exhibit M." *See id.*

24. On August 27, 2019, Harvey confirmed, via email, her receipt of the "Exhibit M" but indicated that Williams would need to wait until the conclusion of the fourteen (14) day holding period required by Liberty Tax. *See* attached **Exhibit E**.

25. After the holding period ended, the Liberty Tax representative stated that Liberty Tax's legal department would send a new agreement for Gulf Coast's representatives to sign. *See id.*

26. Gulf Coast, in accordance with Liberty Tax's instructions, waited for the agreement, but Liberty Tax failed to provide any documents.

27. Though the new agreement had not arrived, Gulf Coast continued to run its Territory based on the representation from Liberty Tax's legal counsel that it could "disregard" the termination notice upon execution of the "Exhibit M."

28. Liberty Tax apparently agreed with the renewed status of the Territory and continued to pay royalties, with the exception of royalties for some existing franchisees who required off-season financing.

29. Then, again, without warning or notice, Liberty Tax sent another termination letter on July 20, 2020. *See* attached **Exhibit F.**

30.     The basis for the termination was Gulf Coast's "fail[ure] to notify Liberty in writing at least 180 days prior to the expiration of the [Agreement]." *Id.*

31.     This termination basis was wholly improper based on the fact that Gulf Coast had already expressed its desire to renew its Agreement in August of 2019, Liberty Tax stated that Gulf Coast could "disregard" the termination notice, and that Liberty Tax accepted Gulf Coast's renewal notice by paying royalties and stating that it would send a new agreement for the Territory.

32.     To the extent Gulf Coast failed to comply with any other material obligation of the Agreement, Liberty Tax's basis for termination was also improper due to its failure to provide notice and an opportunity to cure.

33.     As a result, Liberty Tax's wrongful termination and breach of the Agreement has deprived Gulf Coast of its due profits and income and, after years of faithful service to Liberty Tax, prevented it from growing and developing the business Gulf Coast and Williams worked so hard to build.

**Liberty Tax's Wrongful Release of the Revised Agreements**

34.     At some point after Gulf Coast entered into the Agreement, Liberty Tax released new uniform agreements (the "Revised Agreements") to be entered into by all new area developers, which contained materially different terms than what was contained within the Agreement signed by Gulf Coast (as well as other similarly situated area developers).

35.     While Liberty Tax initially informed existing area developers that they would be permitted to renew their agreements with addendums to the Revised Agreements, in order to make the terms the same as their existing area developer agreements, Liberty Tax changed course and began requiring all area developers to execute the Revised Agreements "as-is" in order to renew.

36. The original Agreement signed by Gulf Coast and its predecessors contains the following provision under Section 8.2:

> If Area Developer wishes to renew ***this Agreement***, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

(emphasis added).

37. As of 2020, and upon information and belief 2021, Liberty Tax requires all renewing area developers to execute the Revised Agreement, and Liberty Tax no longer permits its area developers to renew their existing area developer agreements, or "this Agreement."

## COUNT I
## BREACH OF CONTRACT-WRONGFUL TERMINATION

38. The Plaintiff repeat and re-allege the paragraphs above as if fully stated herein.

39. The Agreement provides that to renew the Agreement, Gulf Coast needed to "notify Liberty Tax in writing at least 180 days before the expiration of the Agreement."

40. Alternatively, the Agreement provides in paragraph 8.2 that when the term ends, "Liberty will provide the Area Developer with the right to enter into a new Agreement with Liberty for the provision of services to Liberty similar to those in this Agreement."

41. Gulf Coast provided notice of its intent to renew, and to the extent Liberty Tax asserts that it did not receive timely and proper notice, Liberty Tax waived its right to enforce strict compliance through emails signed by its representatives.

42. Although Liberty Tax should have renewed the Agreement, Liberty Tax also breached the Agreement by failing to "provide" Gulf Coast "with the right to enter into a new Agreement" with Liberty Tax at the end of the term.

43. Paragraph 8.3(b) of the Agreement gives an exclusive list of causes for which Liberty Tax is permitted to terminate an area developer agreement without providing an opportunity to cure. Liberty Tax has not cited any of those causes as the reason for termination.

44. Further, paragraph 8.3(b)(iv) of the Agreement provides that Liberty Tax may terminate by written notice, and without the opportunity to occur, if "Area Developer fails to perform any material obligation under this Agreement . . . , and such failure has continued for 30 days after Liberty sent written notice of such [b]reach to Area Developer."

45. Gulf Coast performed as required under the Agreement and was at no point in breach of any material obligation.

46. Moreover, Liberty Tax never issued Gulf Coast notice indicating that it believed it to be in breach.

47. Liberty Tax therefore breached the Agreement by terminating the Agreement without proper cause or notice.

48. As a direct and proximate result of Liberty Tax's breach, Gulf Coast has been damaged in the amount of its future profits for the term of the renewed Agreement and any consequential damages due to the wrongful termination.

WHEREFORE, in consideration of the foregoing, the Plaintiff respectfully request the following relief:

1. An Order requiring Specific Performance that Liberty Tax reinstate and/or renew the Agreement and pay any royalties and payments that would have been otherwise due to be paid to Gulf Coast during the time period where the Agreement was wrongfully terminated;

2. In the alternative, direct and consequential damages in the amount of $932,296 for the lost profits related to the failure to renew the Agreement and the amount of franchise royalties not fully and timely paid; and

3. Such other and further relief as this Court may deem just and proper.

## COUNT II
## BREACH OF CONTRACT-FAILURE TO PAY FRANCHISE FEES

49. The Plaintiff repeat and re-allege the paragraphs above as if fully stated herein.

50. The Agreement states that "Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term."

51. In section 3.10, Liberty Tax guarantees that it "will pay Area Developer its share of royalties, franchise fees, and interest not later than the last day of the next calendar month."

52. Liberty Tax breached the Agreement by failing to pay Gulf Coast its full share of the royalties and fees owed to it, for example, its portion of the newly enacted e-filing fees charged by Liberty Tax to the Franchisees, by the deadline stated in section 3.10 of the Agreement.

53. As a direct and proximate result of Liberty Tax's breach, Gulf Coast has been damaged in the amount of the franchise royalties not fully and timely paid to it by Liberty Tax.

WHEREFORE, in consideration of the foregoing, the Plaintiff respectfully request the following relief:

1. Direct and consequential damages in the amount of $25,000; and

2. Such other and further relief as this Court may deem just and proper.

## COUNT III
## BREACH OF THE AGREEMENT- FAILURE TO PROVIDE RENEWAL AGREEMENT UNDER THE SAME TERMS

54. The Plaintiff repeat and re-allege the paragraphs above as if fully stated herein.

55. Liberty Tax's actions with regard to the Agreement have made it impossible for Gulf Coast to renew its Agreement, in violation of the terms of the Agreement.

56. The Agreement provides that Gulf Coast may renew "this Agreement" if timely notice is given to Liberty Tax. *See* Agreement, §8.2.

5. Liberty Tax received notice of an intent to renew the Agreement.

6. However, Liberty Tax has failed to provide an opportunity to Gulf Coast to renew the Agreement.

7. Liberty Tax's failure to provide a proper renewal agreement has prevented Gulf Coast from exercising its right to renew the Agreement.

8. This interference with Gulf Coast's contractual rights constitutes a breach of the Agreement.

9. Additionally, Liberty Tax does not presently allow any existing Liberty Tax area developers to renew their existing agreements. Instead, Liberty Tax requires all existing area developers to enter into a Revised Agreement with materially different terms.

57. The Revised Agreement contains material changes to the terms and conditions of the Agreement, including the following changes:

    A. Paragraph 3.3 of the Revised Agreement does not specify the percentage of fees or royalties payable to area developers and it should provide for the same 50% compensation as the original area developer agreement. Specifically, the Revised Agreement removes the area developer's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised Agreement requires area developers to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores.

  B. Paragraphs 3.15 and 3.16 were added, which include the ability for Liberty Tax to deduct amounts allegedly owed to Liberty Tax from payments to the area developer, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement;

  C. Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from area developers and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee doesn't meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals.

  D. Paragraph 8.1 was amended to reduce the term of the Revised Agreement from ten years to six years; and

  E. Paragraph 8.8(f) was added to impose liability on the area developer for any attorney's fees Liberty Tax incurred in enforcement of the Revised Agreement or its successful defense of such an action by the area developer.

58. Among other things, under the Revised Agreement, Gulf Coast would make less profit from its territory than it would under the original Agreement.

59. These material changes also alter the nature of the area developer agreement and, therefore, constitute a breach of the Agreement's provisions obligating Liberty Tax to provide Gulf Coast the ability to renew the *same* Agreement.

60. As the direct and proximate result of Liberty Tax's actions, Gulf Coast have been damaged.

WHEREFORE, in consideration of the foregoing, the Plaintiff respectfully request the following relief:

1. An Order requiring Specific Performance that Liberty Tax present Gulf Coast with a new agreement that does not contain materially different terms and allow Gulf Coast to renew its Agreement under the same terms as the original Agreement; and

2. Such other and further relief as this Court may deem just and proper.

## COUNT III
## FRAUD

61. The Plaintiff repeat and re-allege the paragraphs above as if fully stated herein.

62. Liberty Tax, through its agents, falsely represented: a.) that it would be providing certain renewal documents to Gulf Coast, even though it never intended to do so and b.) that Gulf Coast could disregard its termination notice.

63. Liberty Tax knew its representations were false and intended to deceive Gulf Coast into believing its Agreement had been renewed so that they would continue working on behalf of Liberty Tax in the Territory until such time as Liberty Tax could find a replacement AD for the territory.

64. Gulf Coast justifiably relied on the false representations from Liberty Tax's representatives and, consequently, continued to operate its business for the benefit of Liberty Tax, which they would not have done but for Liberty Tax's misrepresentations.

65. As the direct and proximate result of Liberty Tax's actions, Gulf Coast has been damaged.

WHEREFORE, in consideration of the foregoing, the Plaintiff respectfully request the following relief:

1. Direct and consequential damages in the amount of $932,296;

2. Reasonable attorney's fees and costs based upon the fraud described herein;

3. Punitive damages in the amount of $350,000 based upon Liberty Tax's intentional acts of fraud and deception; and

4. Such other and further relief as the Court may deem just and proper.

## COUNT IV
## BREACH OF GOOD FAITH AND FAIR DEALING

66. The Plaintiff repeat and re-allege the paragraphs above as if fully stated herein.

67. The Agreement imposed the duty of good faith and fair dealing upon the parties in the performance and enforcement of a contract.

68. Liberty Tax acted in bad faith when it refused to timely provide Gulf Coast with the necessary documents for renewal.

69. Liberty Tax wrongfully and intentionally breached the duty of good faith and fair dealing when it failed to timely provide Gulf Coast with the documents necessary to implement its right to renew "this Agreement." Worse still, Liberty Tax gave Gulf Coast assurance that renewal documents would be provided, even though it never intended to do so.

70. Liberty Tax did this by refusing to provide a new area developer agreement, on the same terms as the original Agreement, or any other necessary documents for renewal, within a reasonable time after receiving proper notice of Gulf Coast's intent to renew.

71. As the direct and proximate result of Liberty Tax's actions, Gulf Coast has been damaged.

WHEREFORE, in consideration of the foregoing, the Plaintiff respectfully request the following relief:

1. Direct and consequential damages in the amount of $932,296; and

2. Such other and further relief as this Court may deem just and proper.

## COUNT IV
## DECLARATORY JUDGMENT

72. The Plaintiff repeat and re-allege the paragraphs above as if fully stated herein.

73. The renewal provision of the Agreement states that the area developer may renew "this Agreement."

74. However, Liberty Tax released Revised Agreements with materially different terms that is uniformly provided to all area developers as the basis for any renewed agreements.

75. The Revised Agreement includes the following material changes:

   A. Paragraph 3.3 of the Revised Agreement does not specify the percentage of fees or royalties payable to area developers and it should provide for the same 50% compensation as the original area developer agreement. Specifically, the Revised Agreement removes the area developer's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised Agreement requires area developers to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores.

   B. Paragraphs 3.15 and 3.16 were added, which include the ability for Liberty Tax to deduct amounts allegedly owed to Liberty Tax from payments to the area developer, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement;

   C. Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from area developers and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee doesn't meet the performance goals, and removes the language stating

that deletion of territories was the "sole remedy" for failure to meet performance goals.

D. Paragraph 8.1 was amended to reduce the term of the Revised Agreement from ten years to six years; and

E. Paragraph 8.8(f) was added to impose liability on the area developer for any attorney's fees Liberty Tax incurred in enforcement of the Revised Agreement or its successful defense of such an action by the area developer.

76. An actual justiciable controversy exists by way of Liberty Tax's breach of its contractual obligation to provide Gulf Coast with the opportunity to renew the same agreement since Liberty Tax now requires all renewing area developers to sign the Revised Agreement.

77. Pursuant to 28 U.S.C. § 2201, Gulf Coast is entitled to a declaratory judgment that states that the terms of the original Agreement provide it the right to renew the same agreement without a material alteration of the terms and conditions.

WHEREFORE, in consideration of the foregoing, the Plaintiff respectfully request the following relief:

1. An order declaring that the original Agreement entered into by Gulf Coast require Liberty Tax to provide the opportunity for Gulf Coast to renew the *same* agreement, i.e. "this Agreement," and not some other materially altered agreement;

2. An order declaring that the Revised Agreements contain material differences from the original Agreement entered into by Gulf Coast and its predecessors;

3. An order declaring that the Revised Agreement to be provided by Liberty Tax to Gulf Coast upon the specific performance referenced in the Counts above must be

under the same material terms and conditions as the original Agreement signed by Gulf Coast;

4. An order awarding to Gulf Coast its costs and expenses incurred as a result of filing this lawsuit; and

5. Such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

**GULF COAST MARKETING, INC.**

By:   /s/ Christopher D. Davis
       Of Counsel

Christopher D. Davis (VSB #74809)
Destinee B. Byers (VSB #94691)
Erin C. McDaniel (VSB #94884)
Davis Law, PLC
555 Belaire Avenue, Suite 340
Chesapeake, VA 23320
Telephone number: 757-277-6772
Fax number: 757-257-8614
chris@davislawplc.com
destinee@davislawplc.com
erin@davislawplc.com
*Counsel for Plaintiff*